IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHNSON CONTROLS, INC.,** | : | CIVIL ACTION |
| **Plaintiff,** | : | |
| v. | : | |
| **WACHOVIA BANK, NA, et al.,** | : | NO. 10-7253 |
| **Defendants.** | : | |

MEMORANDUM

GENE E.K. PRATTER, J.                                                                            OCTOBER 17, 2011

This case concerns competing claims to proceeds of a negotiated instrument that allegedly was intended to be used to pay for work performed in the course of a construction project. Certain of the Defendants hope to have the Court dismiss various of the pending claims.

Johnson Controls, Inc., a Wisconsin corporation, brings claims against Defendants Green Building Systems, Inc., a Pennsylvania corporation, and Mr. Ulrick Joseph, a Pennsylvania resident, seeking to recover the full proceeds of a check made payable jointly to Johnson Controls and Green Building. As alleged, Green Building and Mr. Joseph deprived Johnson Controls of its interest in the check's full value by failing both to obtain Johnson Controls' endorsement on the check and to remit the proceeds of the check to Johnson Controls after its negotiation. Johnson Controls also claims that Defendants Wachovia Bank, N.A., Wachovia Corporation, Wells Fargo Bank, NA, and Wells Fargo Corporation (collectively, "Wells Fargo"), by negotiating the check without Johnson Controls' endorsement, deprived Johnson Controls of its interest in the check. Specifically, Johnson Controls asserts separate counts for a claim of conversion against Wells Fargo (Count I), Green Building (Count II), and Mr. Joseph (Count III).

In Count IV, Johnson Controls makes a claim against Defendants to recover attorney fees and costs.

Green Building and Mr. Joseph now move to dismiss Counts III and IV. For the reasons articulated below, the Motion is denied in part and granted in part without prejudice.

**I.  Factual Background**

In June 2006, Barham Group, LLC, a mechanical contracting company, began construction on the Jersey Shore Medical Center, located in Neptune, New Jersey (the "Project"). Compl. ¶ 11.  Barham Group sub-contracted a portion of the work on the Project to Green Building, which in turn sub-contracted work to Johnson Controls.  *Id.* ¶¶ 12-13.

A payment arrangement developed over the course of the Project in response to Green Building' alleged failure to pay Johnson Controls for its work.  *Id.* ¶¶ 14-15.  Under this arrangement, from December 2008 to September 2009 Barham Group issued to Green Building checks made payable jointly to Green Building and Johnson Controls.  *Id.* ¶ 15.  Green Building allegedly would endorse the checks and then remit them to Johnson Controls, which would retain the full proceeds from each check.  *Id.* ¶ 16.  Johnson Controls alleges that Barham Group intended the full value of these checks to pay Johnson Controls for the work it performed in connection with the Project.  *Id.* ¶¶ 15, 17-18. Johnson Controls further alleges that the endorsements of both Green Building and Johnson Controls were required before any such check could be negotiated.  *Id.* ¶¶ 15, 20.

The basis for the parties' dispute arises from  Check No. 2742, a check dated December 23, 2008, which was issued by Barham Group in the amount of $100,458.83 to Green Building and made payable expressly to "Green Building and Johnson Controls." *Id.* ¶¶ 17, 20.  After

Green Building received Check No. 2742 from Barham, Mr. Joseph, the President of Green Building, endorsed the check by signing his name and specifically writing Green Building' bank account number beneath the endorsement. *Id.* ¶ 21; *id.* Ex. A. Johnson Controls alleges that Green Building and Mr. Joseph were aware of Johnson Controls' interest in the full value of the check, as well as the fact that the endorsements of both Green Building and Johnson Controls were required to negotiate the check. *Id.* ¶¶ 24-25.

However, according to the allegations, after Mr. Joseph endorsed Check No. 2742, neither Green Building nor Mr. Joseph presented the check to Johnson Controls for endorsement. *Id.* ¶¶ 26-27. Johnson Controls never endorsed Check No. 2742 or authorized Green Building or Mr. Joseph to present the check on Johnson Controls' behalf without Johnson Controls' endorsement. *Id.* ¶¶ 26-27. Instead, according to Johnson Controls, Mr. Joseph or another Green Building representative presented Check No. 2742, without notice to or knowledge of Johnson Controls, to a Philadelphia branch of Wells Fargo, where Green Building maintained a bank account. *Id.* ¶¶ 22, 28-29. Notwithstanding the absence of Johnson Controls' endorsement, Wells Fargo negotiated Check No. 2742 and credited the full amount of the check to the Green Building account. *Id.* ¶¶ 30-31.

After the full amount of the check was deposited into the Green Building account, Mr. Joseph and Green Building failed to remit the proceeds of Check No. 2742 to Johnson Controls. *Id.* ¶ 32. Green Building allegedly currently owes Johnson Controls in excess of $450,000, including the full amount of Check No. 2742. *Id.* ¶ 34. Johnson Controls alleges it has demanded payment from Green Building and Mr. Joseph, but its demands have been ignored. *Id.* Additionally, Johnson Controls demanded payment for the full value of Check No. 2742 from the

bank on April 10, 2009 and September 23, 2009, and the bank allegedly has not acceded to the demand. *Id.* ¶ 36. Green Building and Mr. Joseph argue that no cognizable claim has been articulated against them as to Counts III and IV.

## II.  Legal Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley*, 355 U.S. at 47), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted).

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *see also Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1323 (2011). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). The question is not whether the claimant will ultimately prevail but whether the complaint is "sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) (citation omitted). An assessment of the sufficiency of a complaint is thus "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state

a plausible claim for relief." *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85 (3d Cir. 2010) (citations omitted).

The applicable pleading standard also requires adherence to certain well-recognized parameters. For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *see also Twombly*, 550 U.S. at 589 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"). Concomitantly, the Court must also accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010), *cert. denied*, 131 S. Ct. 995 (2011); *Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989).

Nonetheless, the Court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (quoting *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or the plaintiff's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Finally, in considering a pleading's sufficiency, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)), *cert. denied*, 131 S. Ct. 1607 (2011).

**III.  Discussion**

*A.  Count III:  Conversion Claim Against Mr. Joseph*

Johnson Controls alleges that Mr. Joseph, acting as a Green Building corporate officer, is liable for Green Building's conversion[1] of Johnson Controls' interest in Check No. 2742 under the "participation theory" for liability.  Pennsylvania recognizes the "participation theory" as a basis for a corporate officer's personal liability for a tortious act committed by a corporate entity:

> [A]n officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but . . . an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort, [or] for the acts of other agents, officers or employees of the corporation in committing it, unless he specifically directed the particular act to be done or participated, or cooperated therein.

*Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86, 90 (Pa. 1983).  Under the theory, an individual, as an actor rather than as an owner, sustains the liability for the corporation's conduct.  *Id.*  Such liability arises only for an officer's "misfeasance" (the improper performance of an act) but not "mere nonfeasance" (the omission of an act which a person ought to do).  *Loeffler v. McShane*, 539 A.2d 876, 878 (Pa. Super. Ct. 1988).  As such, in order to plead an individual's liability premised on the participation theory, the complaint must allege specific facts that plausibly suggest the individual's participation in the tortious activity.  *See Wicks*, 470 A.2d at 90.  "[M]ere averment that a corporate officer should have known the consequences of the liability-creating corporate act . . . is insufficient to impose liability" and thereby fails to state a claim for relief. *Id.*  As such, "[f]ailure to allege that a corporate officer was an active participant as required

---

[1] In Pennsylvania, "[c]onversion is the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification." *Shonberger v. Oswell*, 530 A.2d 112, 114 (Pa. Super. Ct. 1987) (citing *Stevenson v. Economy Bank of Ambridge*, 197 A.2d 721, 726 (Pa. 1964)).

under the 'participation theory' will result in dismissal of a complaint for failure to state a claim." *McCracken v. Daimler Chrysler Motors Co.*, No. 07-2202, 2008 WL 920344, at *3 (E.D. Pa. Apr. 3, 2008) (citation omitted).

Mr. Joseph argues that Johnson Controls has failed to state a claim for conversion against him under the participation theory. Mr. Joseph contends that Johnson Controls' "threadbare recital of the elements of the participation theory of liability does not suffice" to support a claim pursuant to the theory. Defs.' Mot. at 5. The Complaint, according to Mr. Joseph, "fails to provide any factual substantiation that [Mr.] Joseph personally directed or participated in any alleged tortious conduct" given that the "Complaint is devoid of factual allegations that he actually exercised such authority *vis-a-vis* the alleged conversion of [Johnson Controls'] purported funds." *Id.* at 5-6 (emphasis in original). He further argues that the "averment that [Mr.] Joseph knew about Johnson Controls' purported 'interest in the full value of Check No. 2742' . . . simply [gives rise to the inference of] the mere possibility of misconduct by [Mr.] Joseph . . . ." *Id.* at 6.

However, the Court must conclude that a fair reading of the Complaint does not support Mr. Joseph's characterization of Johnson Controls' allegations. It is well-recognized that "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1950. Indeed, the Court concludes that this Complaint has presented the factual predicate sufficient to plausibly suggest Mr. Joseph's liability under the participation theory. As Mr. Joseph acknowledges, the Complaint alleges his knowledge of Johnson Controls' alleged interest in the full value of Check No. 2742. However, Johnson Controls also pleads that Mr. Joseph was aware that Johnson Controls' endorsement was needed

in order to negotiate the check, and that Green Building was required to remit the check to Johnson Controls. Moreover, Johnson Controls avers that Mr. Joseph personally endorsed Check No. 2742 with his own name and wrote Green Building's bank account number beneath his endorsement. Such affirmative acts, in addition to Mr. Joseph's purported knowledge of Johnson Controls' interest in the check, the required endorsement, and Green Building's remittal obligation, is enough to plausibly suggest Mr. Joseph's misfeasance and that he participated or cooperated in the alleged conversion. Accordingly, the motion to dismiss must be denied with respect to Count III.

**B.  Count IV:  Claim for Recovery of Attorney Fees and Costs Against Green Building and Mr. Joseph**

Johnson Controls alleges in Count IV that pursuant to "42 Pa. C.S.A. §2503 or otherwise allowed by law," "[b]y its acts and omissions, [Wells Fargo] has acted in bad faith" and that Johnson Controls is "entitled to recover its reasonable attorney's fees and costs" from Wells Fargo, Green Building, and Mr. Joseph. Compl. ¶ 69. Despite the Complaint's reference to 42 Pa. Cons. Stat. § 2503,[2] Johnson Controls asserts that it relies on the Complaint's reference to "otherwise allowed by law" as grounds for a claim for attorney fees arising under common law. Specifically, Johnson Controls argues that Pennsylvania recognizes that "where the wrongful acts of the Defendant have involved the Plaintiff in litigation with others or placed him in such relations with others as to make it necessary to incur costs and expenses to protect his interests, such costs and expenditures should be treated as legal consequences of the original wrongful act." Pl.'s Resp. at 7-8 (quoting *Aetna Cas. and Sur. Co. v Nationwide Mut. Ins. Co.*, 471 F.

---

[2] Indeed, Green Building and Mr. Joseph do not assert that any provision of 42 Pa. Cons. Stat. § 2503 is a basis for their claim.

Supp. 1059, 1067 (M.D. Pa. 1979), and citing *Orth v. Consumers' Gas Co.*, 124 A. 296, 297 (Pa. 1924) and *Vattimo v. Lower Bucks Hosp., Inc.*, 428 A.2d 765, 768 (Pa. Commw. Ct. 1981), *aff'd in part and rev'd in part*, 465 A.2d 1231 (Pa. 1983)).

Johnson Controls' articulation of the law and supporting legal authorities appears to conform with Pennsylvania's apparent recognition of the Restatement (Second) of Torts § 914(2), which provides:

> One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

*See also De Lage Landen Fin. Servs., Inc. v. Miramax Film Corp.*, No. 06-2319, 2008 WL 4348074, at *14 (E.D. Pa. Sept. 23, 2008). Comment b of Section 914 provides that this provision applies in circumstances either "when the preceding action was brought against the present plaintiff either by a third person or by the state" or "when the present plaintiff has been led by the defendant's tort to take legal proceedings against a third person." Restatement (Second) of Torts § 914, cmt. b. The first-articulated application involving a preceding suit against the plaintiff appears inapplicable to the motion *sub judice* because the Complaint does not allege that Johnson Controls was subject to a preceding suit by a third-party. Thus, it appears that Johnson Controls is relying on the second-articulated application involving the plaintiff instituting a suit against a third-party. With respect to that application, Section 914's Illustration 3 provides an instructive example of the operative concepts:

> A, who is B's agent, collects money due from C to B. Later A represents to B that C did not pay him and B brings suit against C for the amount supposed to be due. B can recover from A the expenses of suit as well as the amount received by A.

*Id.* cmt. b, illus. 2; *cf.*, *Engstrom v. Mayfield*, 195 F. App'x 444, 452 (6th Cir. 2006) (unpublished) (recognizing that Comment b of the Second Restatement § 914(2) recognizes that a plaintiff may, against a defendant, "recoup attorneys' fees and expenses incurred in bringing an earlier lawsuit against" a third-party). However, the parties' arguments provide no assistance to the Court in evaluating whether Pennsylvania actually recognizes a claim, such as that which Johnson Controls hopes to advance, under circumstances when a plaintiff seeks recovery of attorney fees and costs against a defendant for a suit that the plaintiff brought against a third-party. Given that the parties have not addressed this legal issue, the Court determines it is appropriate at present to refrain from determining the state of the law in Pennsylvania as to this matter.[3]

Nonetheless, assuming, *arguendo*, that Pennsylvania recognizes a claim when a plaintiff seeks recovery of attorney fees and costs against a defendant for a suit that the plaintiff brought against a third-party, it does not appear that Johnson Controls adequately pleads such a claim for recovery against Green Building and Mr. Joseph. Johnson Controls only alleges that Wachovia's alleged conduct is the basis for this claim against Green Building and Mr. Joseph, averring that "[b]y its acts and omissions, Wachovia has acted in bad faith." In the absence of specific factual allegations that plausibly suggest that Johnson Controls has been led by the torts of Green Building and Mr. Joseph to take a legal proceeding against a third party, the Court finds it

---

[3] Additionally, to the extent that Johnson Controls intimates a theory of recovery for its attorney fees resulting from bringing this suit against Green Building and Mr. Joseph as a result of their alleged tortious conduct, the Court will not consider this argument at present. The parties' briefing on this point of law is spartan at best, and neither party discusses any legal authority that supports *vel non* such a theory of recovery. In light of the Court's disposition of this Motion, the Court's assessment of this issue is unnecessary at this time.

appropriate to dismiss this claim against Green Building and Mr. Joseph without prejudice to Johnson Controls to amend the Complaint as to Count IV.

**IV.  Conclusion**

      For the foregoing reasons, the Court concludes that Johnson Controls has adequately alleged a claim of conversion against Mr. Joseph, but has failed to allege a claim for recovery of attorney fees against Green Building and Mr. Joseph.  Green Building and Mr. Joseph's motion to dismiss is thereby denied in part with respect to Count III and granted in part without prejudice as to Count IV.  An appropriate Order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge